UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:21-cr-366 (JEB) |
| v. : | |
| : | |
| GARY EDWARDS, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Gary Edwards to 14 days of incarceration to be followed by a term of 24 months of probation, and $500 in restitution.

I.   **Introduction**

The defendant, Gary Edwards, a 68-year-old retiree, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars of property damage.

Gary Edwards pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. As explained herein, a sentence of 14-days of incarceration followed by a period of 24 months of probation is appropriate in this case because the defendant entered the Capitol Building with a large group of rioters through the Senate Wing Door, where broken glass from the two windows was strewn across the floor and an alarm was

1

blaring, and then went so far as to enter Senate Office S140, the office of Senator Jeff Merkley, which was ransacked.

Although Gary Edwards himself did not post to social media any comments or photos, his wife, Lynn Edwards,[1] did post comments describing what Gary Edwards apparently observed. Specifically, she noted that Gary Edwards observed "a small group of young men dressed in military garb who yelled 'we r going in!'" Those young men "broke the barricade down, ran up the steps, broke a window and climbed in." Then, "[t]hey broke some furniture [and] proceeded to storm the floors." Even if Gary Edwards himself did not participate in any violence or destruction of property, he was certainly aware that the mob he joined was engaging in such conduct and, despite witnessing these illegal acts, he followed them into the United States Capitol Building and accompanied them into an inner office.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the defendant's alliance with a mob that rioted and actually succeeded in halting the Congressional certification renders a sentence of incarceration both necessary and appropriate in this case. Because Gary Edwards made the extra effort of actually entering a senator's office, a probation-only sentence is not appropriate in this case.

---

[1] The Government does not have any evidence that Lynn Edwards was present at the Capitol on January 6, 2021. No charges have been filed against her.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 23 (Statement of Offense), ¶ 1-7. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

*Gary Edwards' Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Gary Edwards was in Washington, D.C., after travelling by bus from Newtown, Pennsylvania, to participate in the rally in support of then-President Trump. At approximately 3:01 p.m. Gary Edwards walked into the Capitol Building through the Senate Wing Door with a large mob, carrying a black backpack, and wearing a "Make America Great Again" hat. This entrance had been breached by the mob approximately forty-five minutes earlier and the windows in that location were broken and glass was scattered across the floor while an alarm blared out. After entering, Edwards walked around and stood in the lobby, then walked down a hallway further into the Capitol Building. Immediately to his left after leaving the Senate Wing Door lobby, Edwards came upon and entered Senate office S140, which is the office of Senator Jeff Merkley. Photos below show Gary Edwards in the vicinity of the Senate Wing Door and inside of Senate Office S140.

The video submitted as Government Exhibit 1 shows Gary Edwards in Senate Office S140. The video was livestreamed by another rioter during the riot using DLive, a video live streaming service. At the :10 second mark, Gary Edwards is seen standing in the lobby inside the Senate Wing Doors. There is obvious property damage near him, and alarm sounds can be clearly heard.

At the 3:37 mark in the video, Gary Edwards is seen in Senate Office S140 using his cell phone. Other rioters are seen looking through the office and sitting on the furniture.









Later that night, Senator Merkley returned to the office Gary Edwards had been in and found that it had been ransacked.  The senator recorded the damage he found and shared it via social media.   The video is enclosed as Exhibit 2 or can be viewed here: https://www.facebook.com/ABCNews/videos/sen-jeff-merkley-shows-damage-done-to-office-

after-pro-trump-mob-vandalized-capi/222464836136603/. Senator Merkley pointed to items that had been torn from the walls and referred to the office has having been "trashed." *Id*. Although there is no evidence to suggest that Gary Edwards contributed to the property damage in the office, his entry into the Capitol Building and the office S140 demonstrate a shared purpose with the other rioters.

Gary Edwards stayed inside the Capitol Building for approximately 24 minutes, exiting through the Senate Wing Door at approximately 3:25 p.m. He admitted that he knew at the time he entered the Capitol Building that he did not have permission to do so.

*Social Media Posts*

Gary Edwards did not make any statements on social media following his unlawful entry in the Capitol Building, but as discussed above, his wife posted comments to her Facebook page and exchanged messages with other Facebook users referencing observations apparently made by Gary Edwards. Some of her relevant messages are as follows:

On January 6, 2021, at 2:08 p.m., she wrote: "No riots at the Capitol like the news is reporting. Gary is there."

On January 6, 2021, at 3:25 p.m., she wrote: "Gary is inside the Capitol. It is peaceful where he is in the rotunda. A few did get in an[d] broke windows and some furniture. . . . Don't know if those people who originally broke through are Trumpers or Antifa disguised. Was very peaceful until then."

She also made the following two posts:

[L]et me tell you what happened as my husband was there inside the Capitol Rotunda. There was a small group of young men dressed in military garb who yelled "we r going in!" They broke the barricade down, ran up the steps, broke a window and climbed in. They broke some furniture. Then proceeded to storm the floors. The crowd followed to stand on the balconies. When this happened there were police milling around doing nothing even after the breech [sic]. Gary walked

> around the back of the building and climbed the stairs walking right into the rotunda. He stood there and heard and saw teargas blasts. The police were right next to him as Gary poured water on their eyes. He stayed to chat w the police who were calm. Prior to Gary getting in evidently one woman was shot. . . .

In another post on Mrs. Edwards' Facebook page, she stated, in part:

> Gary walked around carrying flags of the [U.S]. Gary walked right through the door into the rotunda. Chatting with the police who were very calm. The people san[g] the Star spangled banner 2 time[s] then started chanting whose house? Our house! When asked to leave they did. . . . These were people who watched their rights being taken away, their votes stolen from them, their state officials violating the constitutions of their country and people who are not being given the opportunity to be able to have evidence shown.

At some point after January 6, 2021, these two posts were deleted from Mrs. Edwards' Facebook page or removed from public view.

*The Charges and Plea Agreement*

On April 23, 2021, Gary Edwards was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2), and 40 U.S.C. §§ 5104(e)(2)(C), (D), and (G). On May 4, 2021, he was arrested at his home in Pennsylvania. Gary Edwards was cooperative with law enforcement. He provided his cell phone number and the passcode to his cell phone after it was seized pursuant to a search warrant. He admitted that he was at the Capitol on January 6, 2021, but initially did not want to answer whether he went into the Capitol Building. He stated that he did see property damage, but did not see anyone causing the damage. Once law enforcement showed Gary Edwards photos of him inside the Capitol Building, Gary Edwards admitted, "Well, I guess you know I was in the Capitol."

On May 18, 2021, Gary Edwards was charged by five-count Information with 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(C), (D), and (G). On September 28, 2021, he pleaded guilty to Count Five of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. By plea agreement, Gary Edwards agreed to pay $500 in restitution to the Department of the Treasury.

### III. Statutory Penalties

The defendant now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his or her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, all of the Section 3553(a) factors weigh in favor of a sentence of incarceration.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, as we now discuss, this Court should note that each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment. Had the defendant personally engaged in violence or destruction, he or she would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of the defendant is therefore not a mitigating factor in misdemeanor cases.

Gary Edwards traveled over 150 miles to participate in the riot at the Capitol on January 6. Once there, he entered the Capitol Building through the Senate Wing Door with a large group of

rioters, some who had previously breached the door and broken the window adjacent to the door to gain entry.  If the Facebook posts of Mrs. Edwards were in fact based on information provided to her by Gary Edwards, then he admittedly saw the rioters in "military garb" who "broke the barricade down, ran up the steps, broke a window and climbed in."  But this did not deter Gary Edwards from entering the Capitol Building himself.  Moreover, Gary Edwards conduct inside the building is more troublesome than those who simply marched through the rotunda.  Gary Edwards actually made his way into the personal office of Senator Merkley.

Accordingly, the nature and the circumstances of this offense establish the need for a sentence of incarceration.

### B.  The History and Characteristics of the Defendant

As set forth in the PSR, Gary Edwards has no prior criminal history. Additionally, Gary Edwards has been compliant with his conditions of pre-trial release.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[2] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of

---

[2] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), *available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of a sentence of incarceration. Indeed, general deterrence may be the most compelling reason to impose such a sentence. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70; *see United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 24 ("What happened on that day was nothing less than the attempt of a violent mob to prevent the orderly and peaceful certification of

11

an election as part of the transition of power from one administration to the next, something that has happened with regularity over the history of this country. That mob was trying to overthrow the government.") (statement of Judge Chutkan).

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Gary Edwards' conduct on January 6, entering the Capitol Building through the Senate Wing Door past obvious signs of violence and destruction, entering Senator Merkley's office, which had been ransacked, and walking through the building despite these signs of lawlessness clearly demonstrates the need for specific deterrence for this defendant. Despite the presence of law enforcement, he stayed in the Capitol for over 20 minutes, and took his conduct to a level beyond those who walked through common areas of the Capitol Building. Gary Edwards entered a senator's private office.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with

Congress.[3] Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not necessarily become the default.[4] Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19; *see also United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 ("Judge Lamberth said something to the effect . . . 'I don't want to create the impression that probation is the automatic outcome here, because it's not going to be.' And I agree with that. Judge Hogan said something similar.") (statement of Judge Friedman).

The government and the sentencing courts have already begun to make meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more

---

[3] Attached to this supplemental sentencing memorandum as Exhibit 3 is a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[4] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in aggravating factors, merit serious consideration of institutional incarceration. Those who trespassed, but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention.

The defendant has pleaded guilty to Count Five of the Superseding Information, charging him with parading, demonstrating, or picketing in a Capitol Building, a violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

For one thing, although all the other defendants discussed herein participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long he remained inside, the nature of statements made (on social media or otherwise), where inside the Capitol Building the defendants travelled, whether he destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences. And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Moreover, assessing disparities, and whether they are unwarranted, requires a sufficient pool of comparators. In considering disparity, a judge cannot "consider all of the sentences not yet imposed." *United States v. Godines*, 433 F.3d 68, 69–71 (D.C. Cir. 2006). "The most a judge can do is consider those other sentences that do exist," and "[t]he comparable sentences will be much smaller in the early days of any sentencing regime than in the later." *Id.*; *see generally United States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) ("Without more, two allegedly similar cases constitute too small a sample size to support a finding of an 'unwarranted disparity' in sentences."). In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6)."). Because the Sentencing Guidelines do not apply here, the sentencing court cannot readily conduct a disparity analysis against a nationwide sample of cases captured by the Sentencing Guidelines.

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

As the number of sentences in the Capitol breach misdemeanor cases increase and the pool of comparators grows, the effect on sentences of obviously aggravating considerations should become more apparent. The same is true for obviously mitigating factors, such as a defendant's efforts to prevent assaults on police.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Government has requested, and the Court has imposed, sentences of incarceration in most cases where defendants gained entry to sensitive spaces inside of the Capitol Building. *See, e.g.*, *United States v. Mazzocco*, 1:21-cr-00054 (TSC) (sentenced to 45 days of incarceration for defendant who entered Senate Wing Door and conference room area known as Spouse's Lounge); *United States v. Rau*, 1:21-cr-00467 (JEB) (sentenced to 45 days of incarceration for defendant who entered Senate Wing Door and Speaker of the House's Conference Room); *United States v. Pham*, 1:21-cr-00109 (TJK) (sentenced to 45 days of incarceration for defendant who entered Upper West Terrace door, walked through Rotunda, walked into office area with desks, a computer, and numerous paper files); *United States v. Ericson*, 1:21-cr-00506 (TNM) (sentenced to 20 days of weekend incarceration for defendant who entered Speaker of the House's Conference Room and other office space;); *but see United States v. Marquez*, 1:21-cr-00136 (RBC) (government requested four months of incarceration for defendant who entered Senate Wing Door and then entered Senator Merkley's office; sentenced to 18 months' probation, citing mental health issues).

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the

result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, some of those factors support a sentence of incarceration and some support a more lenient sentence.  Balancing these factors, the government recommends that this Court sentence Gary Edwards to 14 days of incarceration, 24 months of probation, and $500 in restitution.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his early acceptance of responsibility.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By: _____
CHRISTOPHER D. AMORE
Assistant U.S. Attorney
Capitol Riots Detailee
NY Bar No. 5032883
U.S. Attorney's Office
555 4th Street, N.W.
Washington, D.C.  20530
Christopher.Amore@usdoj.gov

17

<u>Exhibit List</u>

Videos:
1. Exhibit 1 – Cell phone video live streamed using DLive from inside the Senate Wing Doors and inside Senate Office S120
2. Exhibit 2 – Senator Merkley Twitter video

*Note that the 2 videos are contained on a DVD that will be provided to the Court.*

*Note that the government does not object to the public release of any of the above videos.*

Documents:
1. Exhibit 3 – Table of sentencing decisions.