**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:21-cr-366 (JEB)** |
| | : | |
| **GARY EDWARDS,** | : | |
| | : | |
| **Defendant.** | : | |

### GARY EDWARDS' MEMORANDUM IN AID OF SENTENCING

Gary Edwards, by and through undersigned counsel, submits this memorandum in aid of sentencing, which is scheduled to occur before the Honorable James E. Boasberg on December 20, 2021. Based on Mr. Edwards' background, his limited role in the January 6 Capitol incursion, and the sentences imposed for similarly situated defendants, as set forth more fully below, Mr. Edwards respectfully requests the Court impose a sentence of probation and payment of $500 in restitution.

I.   **FACTS**

A.   **Gary Edwards' Minor Role in the January 6 Attack on the Capitol**

Mr. Edwards did not come to Washington, D.C. on January 6, 2021, with any notion that an insurrection would occur that day, much less that he would play a role in such an event. Rather, in December 2020, Mr. Edwards learned that a number of religious leaders he follows were holding services to pray for national unity on the National Mall on January 6, 2021. Mr. Edwards wished to participate in these services. This was not the first time Mr. Edwards traveled to D.C. to attend such an event. On September 26, 2020, Mr. Edwards and his wife came to the District and took part in Washington Prayer March 2020, an event organized by Franklin Graham, the leader of the Billy Graham Evangelistic Association, and Jonathan Cahn, the founder of Hope of the World

Ministries.   The   two   pictures   that   follow   are   from   the   September   event:





When Mr. Edwards learned that another such event was taking place, and also that former President Trump was holding a rally the same day, Mr. Edwards arranged to travel from his home in Pennsylvania to D.C. with the intention of attending both.

It is now clear that members of extremist groups such as the Three Percenters and the Proud Boys were also flocking to Washington D.C. on January 6 as part of an organized attack on the Capitol and with the aim of disrupting the certification of the Electoral College. Mr. Edwards is not and has never been a part of any such group and was wholly unaware of their plans. Indeed, in October 2021, when an attorney on the staff of the House Select Committee to Investigate the January 6th Attack on the United States Capitol asked Mr. Edwards about the "Three Percenters," Mr. Edwards confused the group with outlaw motorcycle gangs known as "One Percenters."

When he reached D.C., Mr. Edwards went first to the rally former President Trump was holding on the Ellipse. Mr. Edwards left the Ellipse in the middle of Mr. Trump's speech and started walking east along Pennsylvania Avenue to find the prayer groups and a place to eat lunch. When he reached the grounds of the Capitol, where he understood the prayer meetings were assembling, Mr. Edwards milled around outside with thousands of other people. At one point, a door to the Capitol opened and the crowd began to file inside. Mr. Edwards also went inside. Video surveillance shows Mr. Edwards entered the Capitol Building at 3:01. In the picture below, extracted from video surveillance footage, Mr. Edwards is in a red, white and blue ski hat directly under the exit sign.



By that time, hundreds of people had already flooded through the same door and the flanking windows. Although there were police officers in the room Mr. Edwards entered, they were in the back of the room and not undertaking any active measures to prevent the throng from coming in. Crucially, Mr. Edwards did not know that elsewhere in the Capitol a riot was unfolding. He did not access social media or news sites between the time he walked up Capitol Hill and the time he left the Capitol Building. He did not witness any clashes between rioters and police, or rioters damaging property. Indeed, none of the video provided by the United States in discovery that tracks Mr. Edwards inside and outside the Capitol shows any violence or destruction of property taking place in his presence. There were, however, signs of an earlier disturbance, such as broken furniture and windows.

Mr. Edwards spent about 24 minutes inside the Capitol Building. In that time he encountered an individual who had been teargassed and gave him water. In the picture below,

extracted from another party's social media live stream and provided by the United States in discovery, Mr. Edwards stands with his back to the camera and has already handed the other man a bottle of water.



After aiding that individual, Mr. Edwards continued to walk down the hallway and wandered into an unmarked office, Senate office S140. He was inside that office for a matter of seconds. As with the initial entry into the Capitol, Mr. Edwards was not the first person to enter the office. As with the initial entry, Mr. Edwards had no business being there.

Mr. Edwards next walked to the rotunda where an officer told him to leave, which he did promptly. Mr. Edwards left the Capitol at 3:25. He got back on the bus and returned to Pennsylvania.

**B.**     **Procedural background**

On April 23, 2021, the United States filed a complaint charging Mr. Edwards with five

misdemeanor offenses relating to his entry into the Capitol. *See* ECF No. 1. At 7:12 a.m. on May 4, 2021, FBI agents came to Mr. Edwards' home in Churchville, Pennsylvania. He admitted them and allowed them to search his home. He provided them with the pass code to his cell phone. He consented to an interview and answered the agents' questions without counsel. At 8:15 a.m., the agents arrested Mr. Edwards. He appeared before a United States Magistrate in the Eastern District of Pennsylvania and was released on his personal recognizance with conditions. He was released from custody at 1:50 p.m. on May 4, 2021. He has remained at liberty since then without any issues.

On May 18, 2021, the United States filed an information charging Mr. Edwards with (i) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); (ii) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (iii) Disruption of Official Business, in violation of 40 U.S.C. § 5104(e)(2)(C); (iv) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (v) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). *See* ECF No. 9. On September 27, 2021, Mr. Edwards appeared before this Court and pled guilty to Count 5 of the information. *See* ECF Nos. 22 & 23. Sentencing is scheduled for December 20, 2021.

The offense to which Mr. Edwards pleaded guilty, Parading, Demonstrating, or Picketing in a Capitol Building, (40 U.S.C. § 5104(e)(2)(G)), is a class B misdemeanor or "petty offense," as defined by 18 U.S.C. § 3559(a)(7). The maximum fine is $5,000. *See* 18 U.S.C. § 3571(b)(6). The United States Sentencing Guidelines do not apply to class B misdemeanors. *See* U.S.S.G. §1B1.9. Mr. Edwards has agreed, pursuant to the plea agreement, to pay $500 in restitution to the Architect of the Capitol.

This Court is guided by 18 U.S.C. § 3553(a), which  instructs the Court to craft a sentence "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." The factors enumerated in 18 U.S.C. § 3553(a)(1) include "the nature and circumstances of the offense and the history and characteristics of the defendant." Additionally, § 3553(a)(2)(A) directs the Court to determine the "need" for the sentence, by considering if and how a term of incarceration would "reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense." Subsections (2)(B) through (D) prescribe that the Court consider how a sentence would "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id*. at 2(B-D). Finally, subsections (3), (6), and (7) require the Court to be mindful of "the kinds of sentences available," consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," and consider the "need to provide restitution to any victims of the offense." *Id*. at (3), (6), & (7).

### C.     Gary Edwards' lifetime of service

The Presentence Investigation Report in this case accurately describes Mr. Edwards' life of achievement, devotion to family and community, and respect for the law. Mr. Edwards' father served as a New York City policeman for his entire career. The elder Mr. Edwards impressed on his son the importance of following the law and respecting the police, and Gary Edwards took those lessons to heart. Prior to this incident, he had never been charged with any crime in any jurisdiction in his entire life.

Mr. Edwards graduated from Newtown High School in New York and Bethel College (now Bethel University) in Minnesota. Following college, he began working in the insurance field. After

four years studying various topics including insurance law, accounting, and ethics, and upon passing a series of 10 exams, Mr. Edwards earned the professional designation of Charter Property and Casualty Underwriter. Ultimately, he rose to the position of vice president of several insurance companies in New York and New Jersey.

Although Mr. Edwards is proud of his professional achievements, his greatest pride is his family. His son is a chemical engineer in New Jersey and his daughter is a board-certified emergency room doctor in Illinois. He also has 6 grandchildren. Mr. Edwards and his wife Lynn were married in 1976. He secured permission from the Court to travel to Hawai'i in August 2021 to celebrate their 45th anniversary with their children and grandchildren. Mr. Edwards speaks several times each week with his 91-year-old mother who lives in Rockland County, New York. The Edwards also share their home with Mr. Edwards' 94-year-old mother-in-law, who Mr. Edwards regularly helps get to doctors' appointments.

Mr. Edwards, who is now retired, has thrown himself into community service since leaving the paid workforce. He volunteers at Jesus Focus Ministry Food Pantry in Southhampton, Pennsylvania. On the days Mr. Edwards volunteers at the pantry, he arrives at 6:00 a.m. and works until about 11:45 a.m. His duties include setting up tents and tables, unloading and sorting donated food stuffs, and packing bags for distribution. So far in 2021 alone, Mr. Edwards has worked 409 hours at the pantry. Additionally, Mr. Edwards has responded to domestic and international crises to help people in need. He and his wife have crafted sleeping mats from used plastic bags for people experiencing homelessness in Philadelphia. In 2005, Mr. Edwards traveled to New Orleans after Hurricane Katrina, where he worked as a volunteer for two weeks, leading a team from his church as they removed damaged furniture and moldy carpeting from houses that had been inundated in the flood. They also bleached wood to remove mold. On another occasion, Mr.

Edwards traveled to Mexico with a team of volunteers and built houses. He separately traveled to Haiti, where he worked in an orphanage that had been destroyed in a storm, rebuilding the electrical system. On a volunteer mission to Guatemala, Mr. Edwards fabricated and installed stoves so that residents no longer had to cook using unsafe and inefficient open fires.

## II.   ARGUMENT: THE 18 U.S.C. § 3553(a) FACTORS FAVOR A SENTENCE OF PROBATION

### A.   <u>The nature and circumstances of the offense</u>

The nature and characteristics of this offense defy comparison; there has never been an event like this in the United States. On one hand, Mr. Edwards acknowledges that he participated— if only unwittingly and in the most minor way possible—in an attack on democratic government. At the same time, Mr. Edwards is in an entirely different category from the defendants who were members of extremist groups who conspired in advance to assault the Capitol, who marched up Capitol Hill clad in body armor and carrying zip ties and weapons, who brawled with police officers, who used flag poles to break windows, and who forced their way into the House Chamber and climbed the rostrum from which the Speaker of the House usually presides.

Notwithstanding the *sui generis* nature of this offense, it is possible to distinguish between defendants who are more culpable (and therefore more deserving of a harsh sentence), and those who are less culpable (and therefore more deserving of leniency). In its Sentencing Memoranda in this case as well as those of other January 6 defendants, the United States has proposed nine factors for the Court to consider in crafting a just sentence for defendants in such an extraordinary event as the January 6 attack. These are:

(1) whether, when, and how the defendant entered the Capitol Building;

(2) whether the defendant engaged in any violence or incited violence;

(3) whether the defendant engaged in any acts of destruction;

(4) the defendant's reaction to acts of violence or destruction;

(5) whether during or after the riot, the defendant destroyed evidence;

(6) the length of the defendant's time inside of the building, and exactly where the defendant traveled;

(7) the defendant's statements in person or on social media;

(8) whether the defendant cooperated with, or ignored commands from law enforcement; and

(9) whether the defendant otherwise exhibited evidence of remorse or contrition.

*See* United States' Sent. Memo, ECF No. 27 at 9.  *See also* United States' Sent. Memo in *United States v. Jancart*, 1:21-cr-148 (JEB), ECF No. 25 at 1-2.

The factors the government has urged are useful, as the government's memoranda assert, in placing each defendant's conduct on a spectrum for the purpose of imposing a fair sentence for each individual. Applying those factors to the instant case, it is clear that Gary Edwards stands at the end of the spectrum furthest from the most culpable defendants who intended to participate in a violent insurrection and did so and who, accordingly, are more deserving of a harsh sentence.

As to the factor (1), Mr. Edwards entered the Capitol at 3:01 p.m.[1] He knew he did not have permission to do so. There were broken windows next to the door he walked through and eventually he encountered at least one person who had been teargassed. At the same time, he walked through an open door; he did not force the door or break a window. Moreover, he was

---

[1] Members of the House or Representatives, the United States Senate, and Vice President Pence evacuated the House Chamber at 2:20 p.m., *see* Statement of Offense, ECF No. 23 at 3, and a rioter first breached the window next to the Senate Wing Door (the door Mr. Edwards entered) at 2:13 p.m, *see* United States' Sent. Memo in *United States v. Cordon*, 21-cr-269 (TNM), ECF No. 31 at 5. That is, 41 minutes and 48 minutes, respectively, before Mr. Edwards entered the Capitol Building.

nowhere near the vanguard that originally breached the Capitol and did not even witness that occur. As the above video still shows, by the time Mr. Edwards entered the building, hundreds, if not thousands, of others had already passed through the same door and law enforcement was passively standing by. This does not render his decision to come inside legal. It was not. But it places him on the less culpable end of the spectrum.

As to factors (2) and (3), Mr. Edwards engaged in no violence or acts of destruction whatever, nor did he incite others to do so.

As to factor (4), Mr. Edwards did not personally witness any acts of violence or destruction on January 6. He was not, for example, among the throngs that cheered when police officers were assaulted and forced to retreat. The one individual he encountered who appeared to have been injured was the man who had apparently been teargassed. Mr. Edwards offered him aid by giving him a bottle of water, but did not take any steps to encourage or applaud lawbreaking.

As to factors (5), Mr. Edwards did not destroy evidence. To the contrary, when the FBI came to his house, he invited them in and showed them around. He not only handed over his cell phone but provided the code so that agents could examine data in the phone.

As to factor (6), Mr. Edwards was inside the building for about 24 minutes. In that time, he did not cross any police line or enter the House Chamber. He was inside Senate office S140 for a matter of seconds before leaving. Again, many people had streamed in and out of that office before Mr. Edwards entered it. He did not take part in ransacking the office, and it does not appear that had even occurred at the time Mr. Edwards stepped in and stepped out of the office. As Exhibit 2 of the United States Sentencing Memorandum shows, there is no sign outside office S140 indicating that it is a senator's private office.

As to factor (7), Mr. Edwards differs from many of the more culpable January 6 defendants in that he has virtually no online presence, and neither posted nor transmitted on social media any messages, including any false or inflammatory messages, about the events of January 6.[2] To the contrary, Mr. Edwards chiefly used social media to view photos of his grandchildren. In fact, Mr. Edwards has stopped using (but has not deleted) his Facebook account.

As to factor (8), Mr. Edwards cooperated fully with law enforcement, both on January 6 and in connection with his arrest. Mr. Edwards believes deeply in following the orders of police officers. If any officer had told him not to go in to the Capitol, he would have followed that instruction. Indeed, when an officer in the rotunda directed Mr. Edwards to leave, he promptly did so. As discussed above, when the FBI came to his home in May, Mr. Edwards was extremely cooperative. Relatedly, on October 25, Mr. Edwards sat for an interview with two staff members of the House Select Committee to Investigate the January 6th Attack on the United States Capitol. He did so without being subpoenaed and honestly answered every question put to him.

As to factor (9), Mr. Edwards himself will address the Court at the sentencing hearing, at which time the Court will have the opportunity to assess his remorse and contrition.

_____

[2] The government acknowledges that Mr. Edwards himself never posted anything online about the January 6 attack, and only *his* statements are relevant under the government's criteria. For that reason, the government's references to Mr. Edwards' wife's social media posts are irrelevant to what sentence Mr. Edwards should receive. In any event, Ms. Edwards' posts do not support the government's attempt to impute knowledge of certain events to Mr. Edwards. (The government implicitly recognized this by stating, "*If* the Facebook posts of Mrs. Edwards were in fact based on information provided to her by Gary Edwards . . . ." United States' Sent. Memo at 10 (emphasis added).) Contrary to the government's insinuation, Ms. Edwards' posts do not necessarily reflect what Mr. Edwards observed. First, it is not at all clear that Mr. Edwards is the source of the information Ms. Edwards posted; she was following the event on the news and (obviously) using social media. Second, even if Ms. Edwards was relating what she understood Mr. Edwards to be observing, she was not necessarily doing so accurately. The government's criteria rightly recognizes that a defendant crowing about the events of January 6 online may be relevant to assess that defendant's culpability. But communicating privately with one's spouse—if indeed that is what occurred here—simply does not bear the same relevance.

### B.    Characteristics of the defendant

As described above and in the letters of support attached hereto, Mr. Edwards is a faithful and loving husband, father, grandfather, and son. He is a devoted member of his church. Over the course of a long and successful career in the insurance field, Mr. Edwards worked hard and was repeatedly promoted to leadership positions. In retirement, he has worked just as hard as a volunteer. Mr. Edwards undertakes these projects solely to be of service to his fellow man and in keeping with the directives of his faith. He never thought he would point to them as a reason he should not go to jail.

### C.    Probation accomplishes the goals of sentencing

The unique confluence of events that led to the January 6 attack is unlikely to occur again. It is certain, however, that if it somehow did, Gary Edwards would stay far away and play absolutely no role in it. First, Mr. Edwards is fundamentally a law-abiding person, as evidenced by the fact that he reached the age of 68 before being charged with any crime. Second, as a result of his acts on January 6, Mr. Edwards was arrested and detained, harassed and ridiculed by strangers, and will appear in front of a judge with his liberty at stake. These consequences have shaken Mr. Edwards, and are already more than enough to deter him from ever making the same choice again. For those reasons, there is no need to impose additional punishment to protect the public from future crimes of Mr. Edwards.

### D.    Consistency in sentencing favors a sentence of probation

18 U.S.C. § 3553(a)(6) provides that a court should be mindful of "the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct." Although the events of January 6 are *sui generis*, a sufficient number of defendants have pleaded guilty to crimes on that day—and been sentenced by the judges in this

district—to create a basis to compare what conduct and criminal record generally results in incarceration and what does not.

Judges in this district have imposed sentences of probation for violations of 40 U.S.C. § 5104(e)(2)(G) on more egregious facts than those here. A non-exhaustive list of such defendants includes:

- In *United States v. Bennett*, 1:21-cr-227 (JEB), the defendant was present when rioters tried to breach doors near the Speaker's Lobby and was close enough to hear the gunshot that fatally wounded another rioter; was an apparent admirer of the Proud Boys; posted a boastful message on social media regarding his unlawful entry into the Capitol; and had five prior convictions for property and drug-possession crimes. *See* United States' Sent. Memo, ECF No. 24 at 2, 5 & 9. The Court imposed a sentence of 24 months of probation. *See* Judgment as to Andrew Bennett, ECF No. 29.

- In *United States v. Gallagher*, 6:21-cr-41 (CJN), the defendant followed police officers down the stairs to the Capitol Visitor Center seconds after the officers were forced to retreat due to rioters pelting them with chairs and unknown liquids. *See* United States' Sent. Memo, ECF No. 98 at 2-3. The Court imposed a sentence of two years of supervised probation. *See* Judgment as to Thomas Gallagher, ECF No. 123.

- In *United States v. Sean Cordon*, 21-cr-269 (TNM), the defendant wore body armor and carried a gas mask and bear spray into the Capitol. *See* United States' Sent. Memo, ECF No 31 at 2. He told law enforcement he saw a rioter push a police officer on Capitol grounds. *Id*. at 3. He entered the building by climbing through the broken windows next to the Senate Wing Door 12 minutes after rioters initially breached that entry point. *Id*. at 5. The Court imposed a sentence of two months of probation and a $4,000 fine. *See* Judgment

as to Sean Cordon, ECF No. 37.

- In *United States v. Doyle*, 1:21-cr-324 (TNM), the defendant entered the Capitol through a broken window 10 minutes after the initial breach and yelled at a police officer. *See* United States' Sent. Memo, ECF No. 27 at 3. The Court imposed a sentence of two months of probation and a $3,000 fine. *See* Judgment as to Danielle Doyle, ECF No. 34.

- In *United States v. Ehrke*, 1:21-cr-97 (PLF), while the events of January 6 were unfolding, the defendant boasted on Facebook that she was "on the way to the breached capitol building [sic]." *See* United States' Sent. Memo, ECF No. 20 at 2. The Court sentenced her to three years of probation. *See* Judgment as to Valerie Ehrke, ECF No. 26.

- In *United States v. Rosa*, No. 1:21-cr-68 (TNM), the defendant posted a photo on social media as he walked to the rally on the Mall with the caption "And we fight!!!" and acknowledged he heard bangs and smelled pepper spray prior to entering the Capitol. *See* United States' Sent. Memo, ECF No. 66. at 4-5. The Court imposed a term of 12 months of probation. *See* Judgment as to Eliel Rosa, ECF No. 79.

A small number of defendants who have pleaded to the same offense as Mr. Edwards (40 U.S.C. § 5104(e)(2)(G)), has been sentenced to actual incarceration.[3] Crucially, however, those

---

[3] Other defendants have been sentenced to jail for offenses more serious than Parading, Demonstrating, or Picketing in a Capitol Building. For example, in *United States v. Jancart*, the defendant pleaded guilty to disorderly conduct in the Capitol Building with intent to impede, disrupt, or disturb Congress in violation of 40 U.S.C. § 5104(e)(2)(D). That defendant brought a gas mask to D.C.; headed to the Capitol after learning the building had been "breached"; laughed and cheered when rioters broke through a police line; reached the conference room of the Speaker of the House; and took to social media to downplay the violence of the riot and endorse a future revolution. *See* United States' Sent.  Memo, ECF No. 25 in *United States v. Jancart*, 21-cr-148 (JEB), at 1-2, 15. The Court imposed a sentence of 45 days. *See* Judgment as to Derek Jancart, ECF No. 33. Two of the cases the government cites for the proposition that entry into sensitive spaces inside the Capitol Building warrants incarceration involve pleas to offenses other than 40 U.S.C. 5104(e)(2)(G). In *United States v. Rau*, 1:21-cr-467 (JEB), the defendant pled to violating

defendants either engaged in more serious misconduct than Mr. Edwards, had a significant criminal record, or both. Counsel has identified the following cases in which the defendant pleaded guilty to 40 U.S.C. § 5104(e)(2)(G) and was sentenced either to jail or home confinement:

- In *United States v. Bauer*, No. 21-cr-49 (TSC), the defendant took triumphant selfies from the Capitol Crypt and while standing on the hood of a government vehicle with a middle finger raised; deleted Facebook posts in an attempt to destroy evidence; told the FBI, "I don't feel like I done nothing terribly wrong"; and had an extensive criminal record that resulted in a previous prison sentence. *See* United States' Sent. Memo, ECF No. 33 at 4-6, 11-12. The Court imposed 45 days of incarceration and required the defendant to complete 60 hours of community service. *See* Judgment as to Robert Bauer, ECF No. 44.

- In *United States v. Hemenway*, 21-cr-49 (TSC), the defendant, who acted in concert with Mr. Bauer, entered the Senate Wing Door at 2:19 p.m. *See* United States' Sent. Memo, ECF No. 32 at 3. (Mr. Edwards entered the same door at 3:01.) Like Mr. Bauer, this defendant took celebratory selfies both inside the Capitol and while standing on the hood of a government vehicle. *Id*. at 4-5. Like Mr. Bauer, this defendant previously served a prison sentence. In Mr. Hemenway's case it was for Sexual Battery and Criminal Confinement. *Id*. at 11. The Court imposed 45 days of

---

40 U.S.C. § 5104(e)(2)(D). That defendant taunted police by yelling "We have you surrounded!"; screamed encouragement as other rioters broke through a police line; wore tactical gear; used a bicycle rack as a ladder to scale a wall on Capitol grounds; and deleted evidence from his phone. *See* United States' Sent. Memo, ECF No. 13, p. 3-4, 8-9. *See also United States v. Mazzocco*, 1:21-cr-54 (TSC), discussed *infra*. Defendants Jancart, Rau, and Mazzocco were sentenced to jail but inasmuch as they were convicted of more a serious offense, they are unsuitable for comparison to Mr. Edwards.

incarceration and required the defendant to complete 60 hours of community service. *See* Judgment as to Edward Hemenway, ECF No. 46.

- In *United States v. Bissey*, 1:21-cr-165 (TSC), the defendant was inside the Capitol for about 10 minutes, but celebrated on Twitter, "This is the First time the U.S. Capitol had been breached since it was attacked by the British in 1814," and, regarding January 6, "It was a day I'll remember forever. I'm proud that I was part of it! No Shame." *See* United States' Sent. Memo, ECF No. 26 at 3. The Court imposed 14 days of incarceration and 60 hours of community service. *See* Judgment as to Dona Bissey, ECF No. 32.

- In *United States v. Pham*, 1:21-cr-109 (TJK), the defendant, a senior Houston police officer, faced off with officers in riot gear across a makeshift barrier; shouted "We're taking the House back!"; entered the office suite of House Leader Kevin McCarthy; and denied to FBI agents that he had entered the Capitol Building. *See* United States' Sent. Memo, ECF No. 36 at 1, 5-6, 9, & 11. The Court imposed 45 days of incarceration and a $1,000 fine. *See* Minute Entry of 12/10/2021.

- In *United States v. Jessica Bustle*, 1:21-cr-238 (TFH), the defendant remained inside the Capitol for about 20 minutes and engaged in no violence. *See* United States' Sent. Memo, ECF No. 39 at 2. However, on Facebook before the riot, she posted "[w]e don't win this thing sitting on the sidelines. Excited to stand for truth with my fellow patriots and freedom fighters in DC today." *Id*. Afterwards, also on Facebook, she called Vice President Pence a "traitor," bragged that she "stormed the Capitol," called for a revolution, and wrote, "I'm proud of [those who entered the Capitol] from [sic] standing up!" *Id*. at 3. The Court imposed 60 days of home

confinement and 24 months of probation.[4] *See* Judgment as Jessica Bustle, ECF No. 42.

- In *United States v. Mazzocco*, 1:21-cr-54 (TSC), the defendant penetrated the Capitol as far as the Spouse's Lounge and the Capitol Crypt, where he took smiling selfies. *See* United States' Sent. Memo, ECF No. 28 at 4-7. During the events of January 6, he posted a photo on Facebook captioned, "The capital is ours!" He also likely destroyed evidence since he was seen on surveillance video wearing a digital camera, yet when he was arrested 11 days later he claimed not to know where the camera was. *Id*. at 8. The defendant also sent a text message to a friend, "The more they discover it was antifa the more they're backin up." *Id*. at 10. The Court imposed a sentence of 45 days of jail time without probation. *See* Judgment as to Matthew Mazzocco, ECF No. 34.

- In *United States v. Fitchett*, 1:21-cr-41 (CJN), the defendant recorded a video before she entered the Capitol in which she exclaimed, "We are storming the Capitol. We have broken in. Patriots arise. Woo!" *See* United States' Sent. Memo, ECF No. 114 at 2. The defendant pursued officers down the steps to the Capitol Visitor Center where the officers ordered the crowd to leave. The defendant did not leave and was arrested in the Visitor Center. *Id*. at 4-6. The Court imposed a sentence of 36 months including one month of home confinement.[5] *See* Judgment

---

[4] Joshua Bustle, Jessica Bustle's co-defendant and husband, also pleaded guilty to 40 U.S.C. § 5104(e)(2)(G). He accompanied his wife into the Capitol but did not post inflammatory social media messages. The Court imposed 30 days of home confinement and 24 months of probation. *See* Judgment as to Joshua Bustle, ECF No. 45 in *United States v. Bustle*, 1:21-cr-238 (TFH).

[5] Douglas Sweet, who was alongside Ms. Fitchett throughout her foray into the Capitol, told a local news station on January 7 that he went to D.C. to "talk to the Senate and the House and actually

as to Cindy Fitchett, ECF No. 145.

- In *United States v. Reeder*, 21-cr-166 (TFH), the defendant was present for and recorded an assault on two Capitol Police officers in the Capitol rotunda. He did not intercede to stop the assaults. *See* United States' Sent. Memo, ECF No. 26 at 4. He posted a video in which he said, "We had to do.. ah.. battle with the police inside." *Id*. The Court imposed a sentence of three months without probation. *See* Judgment as to Robert Reeder, ECF No. 41.

- In *United States v. Ericson*, 21-cr-506 (TNM), the defendant reached the United States House of Representatives Speaker's Conference Room where he posed for a picture with his feet on the Speaker's desk and helped himself to a beer from her refrigerator. He was also present when a crowd of rioters overran a position held by a group of police officers, and told the FBI that antifa was responsible for the violence and destruction that took place on January 6. *See* United States' Sent. Memo, ECF No. 37 at 3-4, 6-7. The 12/10/2021 Minute Entry indicates the Court imposed 24 months of probation. The United States in its Sentencing Memorandum in the instant case wrote that Ericson was sentenced to "20 days of weekend incarceration." *See* United States' Sent. Memo at 16.

In short, a probationary sentence would be in line with sentences imposed by judges in this district for violations of 40 U.S.C. § 5104(e)(2)(G) that occurred on January 6 and did not feature aggravating circumstances. A sentence of incarceration would not. Indeed, defendants who have

---

speak," and realized he might have to "pretty much force [his] way in." *See* United States' Sent. Memo, ECF No. 115 in *United States v. Fitchett*, 1:21-cr-41 (CJN), at 8. He also has a prior conviction for Contributing to the Delinquency of Minor, *id*. at 13. The Court sentenced him to 36 months of probation with one month of home detention. *See* Judgment as to Douglas Sweet, ECF No. 142 in *United States v. Fitchett*, 1:21-cr-41 (CJN).

pleaded guilty to violating the same statute as Mr. Edwards but who penetrated further into the Capitol Building, harassed police officers, boasted on social media about breaching the Capitol, and entered through a broken window minutes after the building was first breached received sentences of probation, rather than incarceration. Mr. Edwards did none of those things.

## III.   CONCLUSION

January 6, 2021 is a day that will live in infamy. Gary Edwards regrets deeply that he played even a minor role in that infamy. It was never his intention to hurt anyone, damage anything, or support those who did. His acts blemish what has otherwise been an exemplary life. In light of Mr. Edwards' limited role in the January 6 Capitol incursion, his genuine regret for breaking the law, his lifetime of merit, and the sentences imposed for similarly situated defendants, he prays this Court impose a sentence of probation and order him to pay $500 in restitution.

Respectfully submitted,

  */s/ Adam D. Harris*
Adam D. Harris (Bar No. 469706)
Law Office of Adam D. Harris, L.L.C.
600 Jefferson Plaza, Suite 201
Rockville, MD 20852
(301) 960-5005
adam@adamharrislawfirm.com

*Counsel for Defendant Gary Edwards*

## <u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that on December 14, 2021, I served a copy of the foregoing Memorandum in Aid of Sentencing on the United States through the Court's electronic filing system and by email to Assistant United States Attorney Christopher Amore at Christopher.Amore@usdoj.gov.

                             */s/ Adam D. Harris*
                             Adam D. Harris